IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| E.D., by and through her parents, T.D. and C.D, and T.D. and C.D., individually | : : : | Civil Action No. 09-cv-04837 |
| Plaintiffs | : : | |
| v. | : : | |
| Colonial School District | : : | |
| Defendant | : | Hon. R. Barclay Surrick |

**DEFENDANT'S FURTHER SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD AND FOR SUMMARY JUDGMENT (DOC. NO. 16)
AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(DOC. NO. 17)[1]**

The Supreme Court's recent *Endrew F.* decision reinforces that the educational professionals' decisions were proper and that the hearing officer used the correct standards for her decision. Three important points about special education cases are found in *Endrew F.* Discussion about each, and their practical application to this case, follows.

**I.    *ENDREW F*. CONFIRMS LONGSTANDING THIRD CIRCUIT PRECEDENT.**

If the public school provides "personalized instruction . . . with sufficient supportive services to permit the child to benefit from the instruction, and the other items on the definitional checklist are satisfied, the child is receiving a 'free appropriate public education' as defined by the Act." *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 189 (1982).[2] Such a FAPE must be offered through an Individualized Education Program ("IEP"), 20 U.S.C. § 1401(14), that is "reasonably calculated to enable a child to make progress

---

[1]    By Order entered March 23, 2017 (Doc. No. 39), the court allowed the parties leave to submit supplemental briefs regarding *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*, No. 15-827, 2017 WL 1066260 (U.S. Mar. 22, 2017).

[2]    The "definitional checklist" is currently found at 20 U.S.C. § 1401(9) (2015).

appropriate in light of the child's circumstances." *Endrew F.*, 2017 WL 1066260 at 12. *See also Rowley*, 458 U.S. at 207.

The Third Circuit has long required "meaningful" educational benefit gauged in relation to the child's "potential," and not the lower "*de minimis*" standard rejected in *Endrew F*. *See, inter alia., Polk v. Central Susquehanna I.U. 16*, 853 F.2d 171, 185 (3rd Cir. 1988), *cert. denied*, 488 U.S. 1030 (1989); *Board of Educ. of E. Windsor Reg'l Sch. Dist. v. Diamond ex. rel. Diamond*, 808 F.2d 987, 991 (3d Cir. 1986). *Endrew F.'s* "in light of the child's circumstances" subsumes *Polk's* "potential," but doesn't change it. The hearing officer in our current case used this appropriate standard. (*See, e.g.,* H.O. Dec. at 9 ("meaningful benefit" and "significant learning").) She actually applied this standard. (*See, e.g.,* H.O. Dec. at 15 ("There is extensive evidence that [E.D.'s] 1st grade IEP was reasonably calculated to assure progress commensurate with her ability and her needs, and that she was able to derive meaningful benefit from her education.").) She expressly rejected a standard of "trivial" or "*de minimis*." (H.O. Dec. at 9 ("An eligible student is denied FAPE if his program is not likely to produce progress, or if the program affords the child only a "trivial" or "*de minimis*" educational benefit.").)

*Endrew F.* doesn't change, but reaffirms, that the hearing officer's decision was correct.

## II. *ENDREW F*. CONFIRMS THAT THE IDEA IS FORWARD-LOOKING.

While "open[ing] the door of public education to [disabled] children on appropriate terms," the IDEA did not "guarantee any particular level of education once inside." *Rowley*, 458 U.S. at 192. "[T]he IDEA cannot and does not promise any particular educational outcome. No law could do that – for any child." *Endrew F.*, 2017 WL 1066260 at *9 (citations, quotations, and edits omitted). "[A]cess to an 'education' is what the IDEA promises." *Id.* at *10. *See also Polk*, 853 F.2d at 179. The IDEA's "procedures emphasize collaboration among parents and educators and require careful consideration of the child's individualized circumstances." *Endrew*

2

*F.*, 2017 WL 1066260 at *4.  *Endrew F.* emphasizes that the IDEA assures only a proper process and appropriate decision-making.

A "reasonably calculated" IEP "requires a prospective judgment by school officials." *Id.* at *10.  *See also id*. ("The IEP must aim to enable the child to make progress" and "progress contemplated by the IEP").  This, too, has long been precedent in the Third Circuit where "reasonably calculated" is determined by the knowledge available at the time the IEP is offered and not through hindsight evidence.  *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564-65 (3rd Cir. 2010); *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 762 (3rd Cir. 1995); *Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3rd Cir. 1993).  In this prospective calculation, "progress" is not an after-the-fact determinant whether any previous IEP was appropriate.  A child's "progress" is part of the "circumstances" informing the IEP's development.  Proper "prospective judgment" involves a "fact-intensive exercise . . . informed not only by the expertise of school officials, but also by the input of the child's parents. . . ." *Endrew F.*, 2017 WL 1066260 at *10.  Each IEP is developed "only after careful consideration of the child's present levels of achievement, disability, and potential for growth." *Id.  See also* 20 U.S.C. § 1414(d)(4)(A) (prescribing review and revision process).  *Endrew F.* reiterates that "progress" is viewed relative to "the child's circumstances," and "[t]he adequacy of a given IEP turns on the unique circumstances of the child for whom it was created."  2017 WL 1066260 at *12.

In our case, the hearing officer's decision tracks the proper standard, finding and considering facts relating to E.D.'s development and behavior (H.O. Dec. FF nos. 8, 32, 34, and H.O. Dec. at 13 (noting E.D.'s young age for Kindergarten)); pre-identification interventions (H.O. Dec. FF nos. 3, 19-22); evaluations including assessed cognition and achievement (*id*. nos. 6-8, 13-14); past IEPs and school performance (*id*. nos. at 23-24, 27-32); related services (*id*.

nos. 18, 24, 35-36, 38); parental concerns and preferences (*id*. nos. 25, 39-40, and H.O. Dec. at 14 (noting parent preference to defer evaluation)); and private assessments (H.O. Dec. FF No. 11-12, 15-17, 41). The hearing officer expressly found that E.D.'s "progress accelerated toward the end of the school year [1st Grade], in April and May 2008." (*id*. no. 37.) The hearing officer subjected the facts to correct analysis:

> Just as the appropriateness of an IEP must be determined at the time it was offered, not in light of subsequent developments, the District's actions with respect to evaluating [E.D.] must be judged in terms of what its staff knew and observed during the 06/07 school year as it unfolded and their knowledge of [E.D] grew, not based upon what they learned from later evaluations.

(H.O. Dec. at 13. *See also id*. (concluding no child find violation).)[3] Using this correct standard, she concluded that "[t]here is extensive evidence that [E.D.'s] 1st grade IEP was reasonably calculated to assure progress commensurate with her ability and her needs, and that she was able to derive meaningful benefit from her education." (*Id*. at 15.) The hearing officer also properly rejected liability based on an out-come based retrospective, writing that "[i]t is unrealistic to expect that [E.D.] would finish the 2007/2008 school year at grade level in light of her significant needs and does not negate the conclusion that the District provided an appropriate program for her." (*Id*. *See also id.* at 17 (finding last offered IEP appropriate).[4])

---

[3]     "The record in this case establishes that the District did not ignore either [E.D.'s] functioning in school or her Parents' concerns. It screened, intervened, evaluated, added speech/language support and additional classroom supports, and evaluated again during the same school year as it became apparent that [E.D.] needed more services to make meaningful progress."

[4]     "[The final IEP] complied with IDEA legal requirements in all respects. Moreover, the evidence established that the earlier draft of the proposed IEP also included goals that were reasonably calculated to meet [E.D.'s] needs, and had already addressed Parents' concerns in many respects. (N.T. pp. 1135—1141, 1143, 1144 ; P-29, S-13, S-31) The final IEP offer explicitly incorporated the remaining concerns raised in Parents' August 13 letter."

4

The IDEA is not retrospective, voting up or down past IEPs on outcome-based criteria and after-the-fact assessment. It is forward-looking. *Endrew F*. emphasized the law.

### III. *ENDREW F*. CONFIRMS JUDICIAL DEFERENCE TO EDUCATIONAL PROFESSIONALS.

Given the question of "circumstances" and "prospective judgment," "[t]he issue of whether an IEP is appropriate is a question of fact," reviewed "under a clearly erroneous standard." *D.S.*, 602 F.3d at 564. *See also Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). When resolving this "difficult problem," *Endrew F.*, 2017 WL 1066260 at *9, "[c]ourts are not to substitute their own notions of sound educational policy for those of school authorities. . . ," *Rowley*, 458 U.S. at 206, a principle reiterated in *Endrew F.*, 2017 WL 1066260 at *12. The court, instead, "must accord significant deference to the choices made by school officials as to what constitutes an appropriate program for each student." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 277 (3rd Cir. 2012)").

*Endrew F*. emphatically reinforced deference. *See, e.g.*, 2017 WL 1066260 at *12 (quoting *Rowley*, 458 U.S. at 206).[5] Rejecting the notion "that the IDEA effectively empowers judges to elaborate a federal common law of public education," *Endrew F.*, 2017 WL 1066260 at *9, the practical importance of *Endrew F*. lies in its penultimate paragraph, where it explains that "deference is based on the application of expertise and the exercise of judgment by school authorities." *Id.* at *12. "Application" in the "circumstances" is key: deference is conditioned on "those authorities [being] able to offer a cogent and responsible explanation for their decisions. . . ." *Id*. The hearing officer described the evidence as "overwhelming." (H.O. Dec. at

---

[5] "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created. This absence of a bright-line rule, however, should not be mistaken for 'an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.' "

5

18.) She noted E.D.'s 1st Grade teacher "kept extensive notes and progress monitoring data documenting her strategies and [E.D.'s] progress during her 1st grade year." (H.O. Dec. FF no. 37.)

The evidence supports her findings and conclusions. School staff explained their actions. The hearing officer made detailed factual findings and used the correct standards. The school's actions and the hearing officer's decision are each entitled to deference.

## IV.   CONCLUSION.

*Endrew F*. supports the outcome below. For the reasons stated above, and previously argued, Colonial School District seeks an Order affirming the hearing officer's decision, denying Plaintiffs' Motions, granting Colonial School District's Motion and an Order entering judgment against Plaintiffs and in favor of Defendant.

Sweet, Stevens, Katz & Williams LLP

Date: March 30, 2017    By: /s/Karl A. Romberger, Jr.
Karl A. Romberger, Jr., Esquire, PA60636
331 East Butler Avenue
Post Office Box 5069
New Britain, Pennsylvania  18901
*t* (215) 345-9111
kromberger@sweetstevens.com

*Attorney for Defendant*
*Colonial School District*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| E.D., by and through her parents, T.D. and C.D., and T.D. and C.D. individually, | : : : : | Civil Action<br><br>No. 09-cv-4837 |
| Plaintiffs | : : | |
| v. | : : | |
| Colonial School District, | : : | |
| Defendant | : | Hon. R. Barclay Surrick |

## CERTIFICATE OF SERVICE

I, Karl A. Romberger, Jr., Esquire, counsel for Defendant, hereby certify that a true and correct copy of the foregoing Defendant's Supplemental Memorandum in Support of its Motion for Judgment on the Administrative Record and for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment is being served this day upon:

Catherine Merino Reisman, Esquire
Reisman Carolla P.C.
19 Chestnut Street
Haddonfield, New Jersey 08033-1810

                                                       Sweet, Stevens, Katz & Williams LLP

Date: <u>March 30, 2017</u>               By: <u>/s/ Karl A. Romberger, Jr.</u>
                                               Karl A. Romberger, Jr., Esquire, PA60636
                                               331 Butler Avenue
                                               Post Office Box 5069
                                               New Britain, Pennsylvania 18901
                                               t: (215) 345-9111
                                               kromberger@sweetstevens.com
                                               *Attorneys for Defendant*,
                                               Colonial School District